**U.S. Department of Justice**

***ADAM GORDON***
*United States Attorney*
*Southern District of California*

*Peter S. Horn* *(619) 546-6795*
*Assistant U.S. Attorney* *peter.horn@usdoj.gov*

*San Diego County Office*
*Federal Office Building*
*880 Front Street, Room 6293*
*San Diego, California 92101-8893*

*Imperial County Office*
*516 Industry Way*
*Suite C*
*Imperial County, California 92251-5782*

March 13, 2026

Molly Dwyer, Clerk
U.S. Court of Appeals, Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

Re: *United States v. Tovar-Duran*, No. 24-2328

Dear Ms. Dwyer:

At oral argument on March 6, 2026, the Court allowed the United States to provide a letter brief addressing Tovar-Duran's hearsay-within-hearsay arguments and *United States v. Perlmuter*, 693 F.2d 1290 (9th Cir. 1982). On March 9, 2026, the Court issued an order specifying that the briefing should address "whether the magistrate judge abused her discretion in admitting warrants of removal and written warnings as to Appellant's non-citizenship and whether any error was harmless." The United States submits the following in response.

## I. The Removal and Warning Documents Did Not Include Inadmissible Hearsay Within Hearsay

Tovar-Duran asserts his removal and warning documents were not admissible for their truth, claiming there was "hearsay from an adversarial proceeding" regarding his alienage the judge considered by admitting them.

AOB-32; *see* AOB-31-38; Appellant's Reply Br.-18-21. The first problem for Tovar-Duran—in addition to the positions set out in the government's answering brief and oral argument—is that the documents were not admitted for the truth of his alienage. They were offered primarily to show his knowledge and intent to come into the United States unlawfully. ER-47. That is, the fact that he was physically removed on November 12, 2019, made it more likely that he intentionally attempted to reenter on November 15, 2019. *Id*. And while the removal order did "reference him being alien" it was the fact that he was "removed back to Mexico" pursuant to that order that provided the circumstantial evidence of alienage. *Id*.

The magistrate judge could properly assess the removal documents in these ways, and as indicating that Tovar-Duran had no legal status in the United States. *See* ER-32-33, 35-36, 48. She could also assess the warning documents as indicating, for instance, that he knew he could not re-enter the United States illegally, including outside of a designated port of entry. *See* ER-34, 37, 48. Moreover, when the judge gave her reasons for finding Tovar-Duran guilty, she did not mention any statement of alienage in the removal documents—just that "the A file records further support his statement that he is not a citizen of the United States and does not have a legal right to enter the United States." ER-96. None of this suggests the judge was relying on a hearsay-within-hearsay statement from some unnamed immigration official who issued the removal orders. ER-47-48, 96; *see also* ER-16-17. It was the

fact of his removal and related warnings, pursuant to valid orders, that corroborated his admissions about alienage.

The second problem for Tovar-Duran is that the authorities he relies on, *United States v. Chu Kong Yin* and *United States v. Morales*, do not support his claim.[1] *Morales* provides a useful counterpoint because the hearsay there was undocumented persons' statements to agents that were contained in otherwise admissible reports. 720 F.3d 1194, 1201-03 (9th Cir. 2013) (finding harmless error). The documents here indicate alienage but do not contain statements from a separate interaction or proceeding. ER-32-37.

Finally, to address *Perlmuter*:[2] that case is plainly distinct from this one. The Court there concluded that a record of the defendant's foreign convictions, or "rap sheet"—received from Interpol—was inadmissible under Federal Rule of Evidence 803(8). 693 F.2d at 1293-94; *id.* at 1295 (Ferguson, J., concurring). That was because there was "no indication that Herstig, the person who signed the conviction report" had "first hand knowledge of the convictions[.]" *Id.* at 1293. Herstig's "identity [was] never revealed, and his official position, employment by the Israeli Government and his authorization by that government's law to make these attestations [were] never discussed." *Id.* at 1295 (Ferguson, J., concurring). Here, the positions

[1] Those opinions, as well as one district court ruling, are addressed at pages 38 through 40 of the government's answering brief (AB).

[2] Tovar-Duran did not rely on this case except to note that it was quoted in *Chu Kong Yin*. AOB-32-33.

and identities of the agents with first-hand knowledge of Tovar-Duran's removals and warnings are on the face of the documents. ER-32-37; *see also United States v. Jimenez-Lopez*, 873 F.2d 769, 772-74 (5th Cir. 1989) (distinguishing *Perlmuter* and affirming admission of "record of conviction of illegal entry into the United States by a magistrate's court for the Southern District of California"). There is no first-hand-knowledge requirement regarding a separate alienage finding or proceeding because, as discussed above, that is not contained in the documents—and they were not offered, admitted, or considered at trial for such a purpose. Nor has this Court required first-hand evidence of removals or warnings when confirming these documents are admissible under 803(8). *See, e.g.*, *Contreras*, 63 F.3d at 857; *Hernandez-Rojas*, 617 F.2d at 535; *Valdovinos-Mendez*, 641 F.3d at 1033-35.

## II. The Removal and Warning Documents Were Properly Admitted, and Any Error Was Harmless

As the United States argued in its answering brief, the removal warrants here are admissible under the public records exception to the rule against hearsay, and they may be considered as evidence of alienage. *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1074-76 (9th Cir. 2005); *United States v. Contreras*, 63 F.3d 852, 857-58 (9th Cir. 1995); *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980); AB-33. The warning documents are too. *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1034-35 (9th Cir. 2011); *United States v. Diaz-Lopez*, 403 F. App'x 199, 202 (9th Cir. 2010); AB-33-34. As a result, it was not an abuse of discretion for the

magistrate judge to admit these documents and consider them as some—but not all, or the conclusive—evidence of alienage. ER-32-37, 48, 96; *see* ER-17.

Even if the Court were to find an error, it was harmless. At trial, the government presented substantial independent evidence of Tovar-Duran's guilt. *See* AB-36-37. That included the circumstances of his apprehension—about one mile north of the U.S.-Mexico border, at night—and his two admissions that he was a Mexican citizen without legal status in the United States and who entered the country illegally. ER-52-58, 60-63, 64-73; *see also* ER-78-85. But he now claims that documents about two prior removals were what made the difference in the magistrate judge finding he had illegally entered the country. That is not plausible. There is no reasonable likelihood any error in admitting the documents could have materially affected the judge's verdict. *See United States v. Lucas-Hernandez*, 102 F.4th 1039, 1042 n.1 (9th Cir. 2024); AB-36-37.

For all of the reasons here, in the government's answering brief, and set forth at oral argument, the magistrate judge did not abuse her discretion in admitting Tovar-Duran's removal and warning documents. And even if there were an error, it was harmless. Tovar-Duran's conviction should be affirmed.

Respectfully submitted,

ADAM GORDON
United States Attorney

s/Peter S. Horn
PETER S. HORN
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

This letter brief complies with the page limitation of five pages established by the Court's order of March 9, 2026, and at oral argument on March 6, 2026. It has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word.

s/Peter S. Horn
*Assistant U.S. Attorney*

March 13, 2026.